**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-02588-STV

ANDREW MARK LAMAR,

Plaintiff,

v.

MOSES "ANDRE" STANCIL,
PATRICIA GABRIEL,
RANDOLPH MAUL,
LACY MONDAY,
TINA CULLYFORD,
NICOLE WHITE,
ADRIENNE SANCHEZ,
SHANE STUCKER, and
JESSICA DORCEY,

Defendants.

---

**ORDER**

---

Chief Magistrate Judge Scott T. Varholak

This matter comes before the Court on Defendants' Motion to Dismiss (the "Motion"). [#38] The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##23, 28, 29] The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND[1]

Plaintiff Andrew Mark Lamar is a pro se inmate at Sterling Correctional Facility ("SCF"), having been transferred there from Fremont Correctional Facility ("FCF") on December 2, 2024. [#37 at 1, 4] Plaintiff filed this action against a number of Colorado Department of Corrections ("CDOC") employees for claims arising out of his efforts to obtain orthopedic shoes he purchased for medical treatment during his time at FCF and subsequent facility transfer to SCF. [*Id.* at 2-5]

Specifically, in November of 2023, medical personnel treated Plaintiff for foot and knee pain and recommended orthopedic shoes for pain management. [*Id.* at 5] Plaintiff purchased a pair of "ortho-shoes" having "soft soles and arch support" from a third-party vendor. [*Id.*] However, Plaintiff was not allowed to receive the shoes due to FCF standards and procedures. [*Id.*]

After several months of seeking approval of the ortho-shoes, Plaintiff filed grievances concerning the denial of the shoes with FCF security personnel in September 2024, October 2024, and November 2024. [*Id.*] It appears that relief was granted in response to the grievances, but that Plaintiff did not actually receive the ortho-shoes or any other relief. [*Id.* at 7] During this time, other FCF personnel advocated for approval

[1] The facts are drawn from the allegations in Plaintiff's Third Amended Complaint (the "Complaint") [#37], which the Court accepts as true when considering the Motion. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

of the shoes by sending emails and letters to Defendants Stancil[2], Maul, and Sanchez.[3] [#37 at 5] At some point, however, Defendant Sanchez directed Defendants Maul, Monday, and Cullyford to initiate Plaintiff's transfer, and Defendants Gabriel and Stucker signed off on the transfer to SCF. [*Id.* at 5, 7] According to Plaintiff, the shoes were eventually authorized by FCF security, though not by medical personnel,[4] and Plaintiff did not receive the shoes. [*Id.* at 5-7] Defendant Stucker told several FCF personnel that "if it were up to him, [P]laintiff should get nothing, but a change of scenery."[5] [*Id*. at 7]

On December 2, 2024, within a few weeks of Plaintiff's grievances being "granted," Plaintiff was transferred from FCF to SCF, "a more restrictive facility." [*Id.* at 5, 9] CDOC Administrative Regulation (AR) 600-01 requires that custody reviews (including transfer decisions) be reviewed by multiple CDOC employees.[6] [#37 at 5] From the date of Plaintiff's transfer through his filing of this Complaint, all inmates transferred from FCF to SCF had "disciplinary issues," though the nature of these issues is not stated. [*Id.* at 7]

---

[2] Though Defendant Stancil is not named in the Third Amended Complaint, it is unclear to the Court whether this omission was intended to serve as Defendant Stancil's dismissal from the case. Additionally, the Motion to Dismiss was submitted, in part, by Defendant Stancil. [*See* #38 at 1] Accordingly, the Court broadly construes Plaintiff's Complaint to include Mr. Stancil as a Defendant.

[3] The Complaint does not identify these specific FCF personnel, nor does it articulate the manner of their advocacy or to whom it was addressed.

[4] It is unclear who specifically approved the shoes and what authority they had to do so.

[5] Plaintiff identifies HSA Dang, Nurse Aragon, Sergeant Hazleton, and "several case managers" as individuals to whom Defendant Stucker made such statements. [#37 at 7]

[6] Plaintiff cites CDOC AR 600-02 in the Complaint. The Court presumes he means AR 600-01, because AR 600-02 does not exist, and the substance of Plaintiff's statement aligns with AR 600-01. Plaintiff additionally cites AR 600-01 for this rule in his Response. [*See* #39 at ¶ 26]

After his transfer to SCF, Plaintiff continued filing grievances seeking approval of the shoes and an MRI. [*Id.* at 8] The MRI requests were denied until December 2025.[7] [*Id.*] On March 24, 2025, Plaintiff spoke with a member of the SCF medical personnel, non-party Irene Rawles, who "indicated that she had spoken with Maul and others" and had been told Plaintiff was transferred "for the sole purpose of undercutting the various approvals for the shoes." [*Id.* at 6, 9] She further relayed that SCF personnel "would deliberately obstruct" Plaintiff's receipt of the shoes and that "there was nothing she could do about getting them approved through medical." [*Id.*] On June 18, 2025, Defendant Dorcey arranged a hearing in visiting and declined to issue the shoes to Defendant. [*Id.* at 9]

The SCF transfer prevents Plaintiff from being eligible for parole, as the Sex Offender Treatment and Monitoring Program ("SOTMP") in which Plaintiff is required to participate to be eligible is not offered at SCF. [*Id.* at 7 n. 2] Additionally, Plaintiff experienced ongoing pain and discomfort, injury to his right knee, bone spurring, and skeletal malalignment. [*Id.* at 10] Plaintiff was never provided a reason for his transfer from FCF to SCF. [*Id.* at 9]

On August 18, 2025, Plaintiff initiated this action. [#1] On March 26, 2026, Plaintiff filed the operative Complaint. [#37] The Complaint asserts the following claims, the first two pursuant to 42 U.S.C. § 1983 ("Section 1983") and the third pursuant to Colorado state law: (1) Civil Conspiracy against Defendants Sanchez, Stucker, Maul, Monday, and

---

[7] Plaintiff does not explicitly state that the MRI requests were approved, but approval seems to be implied by both the Plaintiff's language ("[Defendants] continued to deny the MRI requests until December 2025" [#37 at 8]) and the overall focus of his complaint on the shoes rather than the shoes and the MRI.

Gabriel [#37 at 4-6]; (2) Retaliation in Violation of the First Amendment against Defendants Stucker, Sanchez, and Gabriel [*id.* at 7]; and (3) Outrageous Conduct (Intentional Infliction of Emotional Distress ("IIED")) against Defendants Sanchez, Maul, Monday, Cullyford, White, Gabriel, and Dorcey [*id.* at 7-10]. Plaintiff sues Defendants Gabriel and Monday in their official capacities only, while claims against all other Defendants are brought in both their individual and official capacities. [*Id.* at 2-4] Plaintiff seeks compensatory and punitive damages as well as injunctive relief. [*Id.* at 11]

On April 9, 2026, Defendants filed the instant Motion seeking to dismiss all three of Plaintiff's claims. [#38] Plaintiff responded to the Motion [#39] and Defendants replied [#49].

## II. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject

matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). When reviewing a facial attack on subject matter jurisdiction, the Court "presume[s] all of the allegations contained in the amended complaint to be true." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

**B. Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff

to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The Court's ultimate duty is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### C. Pro Se Litigants

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant." *Id.* at 1110 n.3. The Court, however, cannot be a pro se litigant's advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). Moreover, pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)).

## III. ANALYSIS

Defendants make several challenges to Plaintiff's claims in their Motion to Dismiss. First, they argue that Plaintiff has failed to state an official capacity claim. [#38 at 5-7] Second, they assert qualified immunity as a defense to the individual capacity claims for conspiracy and retaliation, and they further argue that Plaintiff has failed to state a claim for either conspiracy or retaliation. [*Id.* at 7-12] Finally, they argue Defendants are entitled to Colorado Governmental Immunity Act ("CGIA") immunity on Plaintiff's outrageous conduct claim and, regardless, that Plaintiff fails to state a claim for outrageous conduct. [*Id.* at 12-15]

### A. Official Capacity Claims

Plaintiff asserts claims against Defendants in their official capacities under Section 1983 for civil conspiracy and First Amendment retaliation arising from his transfer. [#37 at 4-7]

#### 1. Jurisdiction

The Eleventh Amendment to the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Pursuant to the Eleventh Amendment, the Court lacks subject matter jurisdiction to adjudicate an action brought by a citizen of a state against the state itself, its agencies, or its officials in their official capacities." *Silva v. US Bank, Nat'l Ass'n*, 294 F. Supp. 3d 1117, 1126 (D. Colo. 2018) (citing *Johns v. Stewart*, 57 F.3d 1544 (10th Cir. 1995)). Therefore, "[t]he CDOC, as an agency of the State, is immune from suit." *Allen v. Figuera*, No. 07–cv–00137–ZLW–BNB, 2008 WL 4829744, at *1 (D. Colo. Nov. 4, 2008). And as to suit against officials in their official capacities, it is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the State." *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994). Thus, to the extent Plaintiff seeks monetary damages from Defendants in their official capacities, Plaintiff's claims must be dismissed because they are barred by the Eleventh Amendment.

But there is an exception to Eleventh Amendment immunity. "[U]nder *Ex parte Young*, 209 U.S. 123 (1908), 'a plaintiff may bring suit against individual state officers

acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief.'" *Butts v. Colorado*, No. 25-cv-00990-NYW-SBP, 2026 WL 878771, at *8 (D. Colo. Mar. 31, 2026) (quoting *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012)). And Plaintiff seeks both damages and injunctive relief in the form of enjoining the "policy and custom that [D]efendants adhere to," namely the policy Plaintiff alleges caused his transfer to SCF after he sought medical treatment. [#37 at 11]

To determine whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)). Plaintiff appears to allege that Defendants have an ongoing policy of transferring prisoners "as a way either [to] retaliat[e] or to postpone a benefit or service the prisoner had fought to receive." [#37 at 5] Accordingly, the injunction sought by Plaintiff could feasibly be characterized as prospective relief for a violation of federal law, both for the conspiracy claim and for the First Amendment retaliation claim. Thus, to the extent Plaintiff seeks injunctive relief from individual Defendants in their official capacities, the Court has subject matter jurisdiction to consider these claims. To the extent Plaintiff asserts official capacity claims for monetary damages, the claims are **DISMISSED**.

### 2. Statement of Claims

Though the Court has subject matter jurisdiction to consider official capacity claims to the extent that Plaintiff seeks injunctive relief, Plaintiff must still plausibly state his

claims against the official capacity Defendants. Defendants argue Plaintiff's Complaint fails to identify an official CDOC policy or custom that caused the alleged violations of federal and constitutional law, and that without such a policy, Plaintiff's official capacity claims are barred. [#38 at 5-7]

Defendants appear to base this argument on the concept that suits against state officials in their official capacities are generally treated as suits against the State. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). But this is not the case when a plaintiff sues an individual in their official capacity for injunctive relief. Indeed, "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1988) (same). The case cited by Defendants later clarifies this point, emphasizing that "[s]tate officers *sued for damages* in their official capacity . . . assume the identity of the government that employs them." *Hafer*, 502 U.S. at 27 (citing *Will*, 491 U.S. at 71) (emphasis added). Within the same paragraph, the United States Supreme Court quotes *Will*, indicating that while official-capacity suits for damages are considered suits against the State, official-capacity suits for prospective relief are not considered actions against the State. *Id.* (quoting *Will*, 491 U.S. at 71 n.10).

And the Tenth Circuit has further clarified this point. In response to the exact argument made by Defendants here, the Tenth Circuit noted that "the 'policy or custom' standard isn't just a liability standard, it's a liability standard for suits against municipalities—entities not immune from suit under the Eleventh Amendment—and has no applicability to state officers who are immune from suit for damages but susceptible to suit under *Ex parte Young* for injunctive relief." *Rounds v. Clements*, 495 F. App'x 938,

941 (10th Cir. 2012) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694-95 (1978)). Other courts around the country have found the same. *See, e.g.*, *Spann v. Hannah*, No. 20-3027, 2020 WL 8020457, at *3 (6th Cir. Sept. 10, 2020) ("[plaintiff] was not required to allege a custom or policy in order to state a claim for injunctive relief against the state defendants in their official capacities"); *Minn. RFL Republic Farmer Labor Caucus v. Freeman*, No. 19-cv-1949 (ECT/DTS), 2020 WL 1333154, at *3 (D. Minn. Mar. 23, 2020) (quoting *Rounds* for the proposition that the *Monell* liability standard has no applicability to state officers who are susceptible to suit under *Ex parte Young*).[8] Plaintiff need only allege a plausible ongoing violation of federal law to state a claim for injunctive relief against Defendants in their official capacities. *See Spann*, 2020 WL 8020457, at *3. The Court determines whether Plaintiff has done so in the remaining sections of its analysis.

**B. Section 1983 Claims**

The Court next addresses the plausibility of Plaintiff's official and individual capacity claims for civil conspiracy and First Amendment retaliation pursuant to Section 1983. [#37 at 4-7] Defendants argue that Plaintiff fails to state a claim for either civil conspiracy or retaliation, and that Defendants are entitled to qualified immunity. [#38 at 7-12]

---

[8] The cases Defendants cite from the District of Colorado do not convince the Court otherwise. *Collins* was decided before *Rounds*, and the court noted that the plaintiff in that case had not sought injunctive relief as to the relevant claim. *See Collins v. Colo. Dep't of Corr.*, No. 08-cv-02657-WYD-KMT, 2010 WL 254959, at *12-13 (D. Colo. Jan. 15, 2010). The reasoning used in *Higby* depended in large part on the rationale in *Collins*, which the Court does not find appropriate to apply here for the aforementioned reasons. *See Higby v. Williams*, No. 20-CV-1339-PAB-KLM, 2021 WL 3039019, at *5 (D. Colo. June 25, 2021), *report and recommendation adopted*, 2021 WL 3032746 (D. Colo. July 19, 2021).

### 1. Civil Conspiracy

Plaintiff asserts a Section 1983 conspiracy claim against Defendants Sanchez, Stucker, Maul, Monday, and Gabriel. [#37 at 4-6] Though it is unclear whether Plaintiff intended to assert this Claim against Defendant Stancil, the Court includes Defendant Stancil in its analysis as Defendant Stancil is mentioned within the facts of the Claim. [*Id.*] A civil conspiracy under Section 1983 is "a conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law." *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990). Conspiracy requires both "an agreement upon a common, unconstitutional goal, and concerted action taken to advance that goal." *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022) (quotation omitted). "[B]ecause [d]irect evidence of an agreement to join a . . . conspiracy is rare, . . . a defendant's assent can be inferred from acts furthering the conspiracy's purpose." *Id.* "An express agreement is consequently unnecessary." *Id.* (citing *Frasier v. Evans*, 992 F.3d 1003, 1024 (10th Cir. 2021)). "Further, while [t]he participants in the conspiracy must share the general conspiratorial objective, they need not know all the details of the plan designed to achieve the objective or possess the same motives for desiring the intended conspiratorial result." *Id.* (quotation omitted). Nevertheless, "[c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Frasier*, 992 F.3d at 1024. "A § 1983 plaintiff must 'make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her.'" *Bledsoe*, 53 F.4th at 609 (quoting *Robbins*, 519 F.3d at 1250) (emphasis omitted).

Plaintiff alleges the following facts in support of his conspiracy Claim. Defendants Stancil, Maul, and Sanchez received emails, phone calls, and text messages from third

parties advocating for Plaintiff to receive ortho-shoes he had purchased. [#37 at 5] Defendants Maul, Monday, and Sanchez were involved in the approval process of the shoes. [*Id.*] Defendant Stucker objected to issuance of the shoes. [*Id.* at 7] Defendant Stucker stated to several FCF personnel that if it were up to him, Plaintiff should get nothing but a change of scenery. [*Id.*] After Plaintiff filed a series of grievances, Defendant Sanchez directed Defendants Maul and Monday to initiate Plaintiff's transfer from FCF and SCF, and Defendants Gabriel and Stucker were signatories on the transfer. [*Id.* at 5, 9] On March 24, 2025, Plaintiff spoke with Ms. Rawles and was informed that Plaintiff was transferred to SCF "for the sole purpose of undercutting the various approvals for the shoes." [*Id.* at 6] Ms. Rawles came to this conclusion after a conversation with Defendant Maul and other unnamed individuals. [*Id.*]

Defendants argue that these facts are insufficient to state a valid conspiracy claim. [#38 at 9-10] And the Court agrees with respect to Defendants Stancil, Monday, and Gabriel. As to Defendant Stancil, Plaintiff alleges only that Defendant Stancil received messages advocating for Plaintiff to receive the ortho-shoes. [#37 at 5] Plaintiff does not allege that Defendant Stancil was in any way involved with approval of the shoes or with Plaintiff's transfer. There is thus nothing in the Complaint from which the Court could infer that Defendant Stancil agreed with any other individual to violate Plaintiff's constitutional rights nor that Defendant Stancil took any action in furtherance of such a purpose.

As to Defendant Gabriel, Plaintiff alleges only that Defendant Gabriel signed off on the transfer. [*Id.*] There is nothing in the Complaint which suggests that Defendant Gabriel was aware of Plaintiff's efforts to seek medical care. There is nothing in the Complaint which could lead the Court to believe that Defendant Gabriel was aware of any

improper purpose for the transfer, let alone agreed to act in furtherance of such a purpose. Furthermore, the fact that Defendant Gabriel signed off on the transfer is not alone suggestive of a conspiracy. Coordinated administrative conduct conforming to standard administrative requirements, such as Administrative Regulation 600-01, does not itself indicate that any particular Defendant communicated or agreed to a common plan. *Compare Twombly*, 550 U.S. at 556–57 (allegations consistent with lawful conduct do not plausibly suggest agreement to a conspiratorial objective), *with Bledsoe*, 53 F.4th at 610-12 (specific factual allegations of withholding documentation, fabricating evidence, and knowingly using false testimony supported inference of agreement to a conspiracy).

Plaintiff's claim against Defendant Monday fails for the same reason. Plaintiff's allegations against Defendant Monday are that she was involved in some respect in the approval process of the shoes, and that she was directed by Defendant Sanchez to initiate Plaintiff's transfer. [#37 at 5] This is not enough to plausibly suggest that Defendant Monday was in agreement that the transfer should be effectuated to violate Plaintiff's constitutional rights. Plaintiff alleges only that Defendant Monday complied with administrative requirements and did not permit Plaintiff to receive ortho-shoes without Defendant Sanchez's approval. In his Response to the Motion, Plaintiff properly quotes the Tenth Circuit: "The participants in the conspiracy must share the general conspiratorial objective," which requires showing "a single plan, the essential nature and general scope of which [was] know[n] to each person who is to be held responsible for its consequences." [#39 at ¶ 31 (quoting *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990) (quotation omitted))] But Plaintiff has not alleged that such a plan was known and agreed to by Defendant Monday.

Plaintiff provides more factual support for the involvement of Defendants Sanchez, Stucker, and Maul in the alleged conspiracy. Plaintiff identifies various facts which suggest that these three individuals had improper motives for transferring Plaintiff. For example, Plaintiff indicates that Ms. Rawles told Plaintiff he had been transferred for the "sole purpose" of preventing Plaintiff from receiving the ortho-shoes, and that Ms. Rawles learned this information at least in part from Defendant Maul. [#37 at 6] Plaintiff alleges that Defendant Stucker implied through his comments to FCF staff that he was opposed to Plaintiff receiving ortho-shoes and believed that Plaintiff should instead be transferred facilities for a "change of scenery." [*Id.* at 7] Additionally, Defendant Sanchez refused to approve the ortho-shoes for a period of time [*id.* at 5] and ordered Plaintiff's transfer only days after the shoes got approved [*id.* at 6].

While "[p]arallel action . . . does not necessarily indicate an agreement to act in concert," *Frasier*, 992 F.3d at 1025, the Court finds that Plaintiff has alleged more than simply parallel action. Plaintiff has alleged that at least one individual told him, after speaking with one of the Defendants to this case, that the transfer was initiated for the sole purpose of depriving Plaintiff of medical care.[9] And, construing the Complaint liberally, it appears that Defendants Sanchez, Stucker, and Maul agreed on this unconstitutional goal. Defendant Maul expressed the goal to other individuals, Defendant Stucker expressed his desire to achieve the goal, and Defendant Sanchez ordered other

[9] Though Defendants argue that this fact is too vague to support the existence of a conspiracy [#38 at 9-10], the Court does not agree. It does not matter that the other individuals Ms. Rawles spoke to are unnamed. The fact that Ms. Rawles spoke to Defendant Maul and apparently concluded that the transfer was made solely to prevent Plaintiff from receiving ortho-shoes supports the plausibility of the existence of a conspiracy.

individuals to achieve the goal very closely in time with Plaintiff being approved the shoes after apparently denying the shoes for several months. Based on these facts the Court can infer that Defendants Maul, Sanchez, and Stucker all understood the transfer to have been initiated and eventually undertaken for the purpose of depriving Plaintiff of medical care. This plausibly implies that Defendants had a meeting of the minds. Furthermore, all three Defendants either ordered the transfer, initiated the transfer, or signed off on the transfer, so Plaintiff has adequately alleged that these Defendants took concerted action to advance the goal of the conspiracy.

Defendants additionally argue that, in Plaintiff's previous Complaint, Plaintiff alleged that he was informed after the transfer that he did not qualify for medical shoes under the clinical standards, and that the shoes he sought would not be provided out of security concerns. [#38 at 10] But this fact says nothing about the state of mind of the Defendants and whether they had an improper agreement to transfer Plaintiff. This is an alternative explanation for Defendants' conduct, but that does not make Plaintiff's allegation implausible. "[T]he degree of plausibility only becomes relevant when an obvious alternative explanation overwhelms any inference of liability that might otherwise exist." *Doe v. Univ. of Colo., Boulder through Bd. of Regents of Univ. of Colo.*, 255 F. Supp. 3d 1064, 1076 (D. Colo. 2017) (internal quotations and emphasis omitted). Here, there is no such overwhelming inference present based on the facts of the Complaint. Thus, while alternative explanations for Defendants' conduct may be plausible, this alone is not sufficient to dismiss Plaintiff's claims.

For the foregoing reasons, the Motion to Dismiss is GRANTED with respect to Claim One to the extent that it is asserted against Defendants Monday, Gabriel, and

Stancil because Plaintiff has failed to plausibly allege that these Defendants were engaged in a conspiracy to violate Plaintiff's federally protected rights. He has, however, plausibly alleged that Defendants Maul, Sanchez, and Stucker were engaged in such a conspiracy. Nonetheless, because these latter Defendants have asserted a qualified immunity defense, the Court must determine whether these Defendants violated a clearly established right. The Court engages in that analysis below. *See infra* Section III.B.3.

**2. First Amendment Retaliation**

Plaintiff asserts his claim for First Amendment retaliation against Defendants Stucker, Sanchez, and Gabriel. [#37 at 7] To state a First Amendment retaliation claim, a plaintiff must plausibly allege the following:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)). "While a prisoner enjoys no constitutional right to remain in a particular institution . . . prison officials do not have the discretion to punish an inmate for exercising his [F]irst [A]mendment rights by transferring him to a different institution." *Frazier v. Dubois*, 922 F.2d 560, 561-62 (10th Cir. 1990) (quotation omitted). Nevertheless, "it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison" and "an inmate is not inoculated from the normal conditions of confinement . . . merely because he has engaged in protected activity." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). With these principles in mind, the Court turns to the three elements of Plaintiff's First Amendment claim.

**a. Constitutionally Protected Activity**

"It is well-settled that [p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (quotation omitted). "Nor may prison officials retaliate against prisoners for filing administrative grievances." *Leek v. Miller*, 698 F. App'x 922, 925 (10th Cir. 2017) (citing *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991)). Because courts have recognized that filing grievances in prisons is activity constitutionally protected by the First Amendment, Plaintiff fulfills the first prong—he was engaged in constitutionally protected activity.[10] Moreover, Defendants agree that filing grievances constitutes protected activity under the First Amendment. [#38 at 11]

**b. Injury That Would Chill Protected Activity**

When considering the chilling effect of the defendant's actions, the "standard for evaluating that chilling effect on speech is objective, rather than subjective." *Shero*, 510 F.3d at 1203. The objective test may be informed by the plaintiff's own acts and persistence in engaging in the activity. *See Parkhurst v. Shannon*, 172 F.4th 1176, 1183 (10th Cir. 2026) ("[W]e too have coupled application of the objective test with observations about what the plaintiff did after an alleged act of retaliation."); *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001) ("[Plaintiff's] persistence in maintaining his website offers

[10] Plaintiff also asserts that the "retaliatory act [of] transferring [P]laintiff" was intended "to prevent him from receiving the medical services" after a decision "permitting the issuance of the ortho-shoes." [#37 at 7]. However, the First Amendment does not protect Plaintiff's access to medical care; it only protects certain speech, such as filing grievances. *See, e.g.*, *Van Deelen v. Johnson*, 497 F.3d 1151, 1156 (10th Cir. 2007) (finding that "a private citizen exercises a constitutionally protected First Amendment right anytime he or she petitions the government for redress" (emphasis omitted)). Accordingly, the Court only analyzes the retaliation claim as it concerns protected speech.

some evidence that [Defendant's] actions did not prevent such private speech."). Fundamentally, however, "[t]he focus . . . is upon whether a *person of ordinary firmness* would be chilled, rather than whether the particular plaintiff is chilled." *Smith*, 258 F.3d at 1177 (emphasis in original).

The question here is whether the transfer from FCF to SCF would chill a person of ordinary firmness from continuing to file grievances. Defendants point to Plaintiff's filing of additional grievances after his transfer to suggest the transfer would not chill a person of ordinary firmness, as Plaintiff himself was not chilled. [#38 at 11-12] But this argument ignores the objective nature of the test.

Applying an objective test, the Tenth Circuit has held that transfer to a more dangerous prison or to an out-of-state supermax prison would chill a person of ordinary firmness from engaging in a protected activity. *See Miskovsky v. Jones*, 437 F. App'x 707, 713 (10th Cir. 2011) (transfer to more dangerous prison would chill person of ordinary firmness); *Gee*, 627 F.3d at 1189 (transfer to an out-of-state supermax would chill person of ordinary firmness). On the other end of the spectrum, the Tenth Circuit has held a lateral transfer between cells or prisons that does not have a substantial impact on a plaintiff's rights or privileges to be insufficient; there must be a more-than-de-minimis injury to chill a person of ordinary firmness. *See Leek*, 698 F. App'x at 926 (finding that a plaintiff had not plausibly alleged a retaliation claim where the plaintiff alleged that, following filing various lawsuits and grievances, "he was transferred [to a different cell] within the same prison and did not allege he suffered a change in security status or loss of privileges"); *see also Gandy v. Barber*, No. 12-cv-03331-MSK-MJW, 2014 WL 6853952, at *4 (D. Colo. Dec. 5, 2014) (dismissing retaliation claim even though transfer

resulted in termination of apprenticeship because Plaintiff did not show he could not resume a similar program or suffered any other setback), *aff'd*, 641 F. App'x 835 (10th Cir. 2016).

Plaintiff's transfer here falls somewhere in between these two extremes. Plaintiff asserts that he was transferred to a more restrictive facility that does not offer SOTMP, which is required for Plaintiff's parole eligibility. [#37 at 7, 9] A transfer that effectively results in loss of parole eligibility is distinguishable from a mere intra-facility transfer or a trivial inconvenience. While distinct from the safety concerns arising out of a transfer to a more dangerous prison, the loss of the possibility of parole is a more-than-de-minimis injury and would chill a person of ordinary firmness from continuing to file grievances. As Plaintiff points out, the loss of Plaintiff's ability to participate in SOTMP transforms his indeterminate sentence into a life sentence.[11] [*See* #39 at 10] Accordingly, Plaintiff has plausibly alleged an injury that would chill protected activity.

**c. Protected Activity as Substantial Motivation**

The third prong requires the plaintiff to show "that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero*, 510 F.3d at 1203. In other words, Plaintiff must show "that 'but for' the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Peterson*, 149 F.3d at 1144 (quoting *Smith v. Machner*, 899 F.2d 940, 949-50 (10th Cir. 1990)). "Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather

[11] Though it is not clear if Plaintiff was previously or had any future intention of participating in SOTMP, it would still chill a person of ordinary firmness to have the ability to participate in the program, and thus possibly be eligible for parole, revoked.

allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier*, 922 F.2d at 562 n.1.

Defendants argue that Plaintiff does not allege any facts suggesting that Defendant Gabriel engaged in retaliatory conduct. [#49 at 8] The Court agrees. Plaintiff alleges only that Defendant Gabriel was a signatory in the transfer decision. [#37 at 5] Plaintiff provides neither direct facts nor facts from which the Court could infer that Defendant Gabriel knew of Plaintiff's grievances, much less that she signed off on the transfer in retaliation for those grievances. *See Barry v. Colo. Dep't of Corr.*, No. 24-cv-00110-RMR-TPO, 2025 WL 358479, at *18 (D. Colo. Jan. 31, 2025) (recommending dismissing retaliation claim against defendants when nothing in the pleadings supported an inference that the defendants knew about or had reason to know about the plaintiff's grievance), *report and recommendation adopted*, 2025 WL 4481137 (D. Colo. Feb. 19, 2025). Because Plaintiff does not allege facts that support Defendant Gabriel's knowledge of Plaintiff's protected activity, Plaintiff has not plausibly alleged that the filing of his grievances was the substantial motivation for Defendant Gabriel to sign off on Plaintiff's transfer.

Defendants similarly argue that Plaintiff alleges no facts suggesting that Defendant Sanchez engaged in retaliatory conduct. [#49 at 8] The Court agrees. Plaintiff alleges that Defendant Sanchez directed various individuals to transfer Plaintiff "for the sole purpose to prevent Plaintiff receiving the ortho-shoes." [#37 at 5, 6] Plaintiff was even directly told by SCF medical personnel that the reason for his transfer was to undercut approval of Plaintiff's sought ortho-shoes. [*Id.* at 6] Indeed, Plaintiff repeatedly alleges that the "only plausible reason" for his transfer was to deny Plaintiff medical care. [*Id.* at

5] And with respect to the retaliation claim, Plaintiff asserts that the transfer occurred to "prevent [Plaintiff] from receiving" medical services. [*Id.* at 7] In sum, Plaintiff asserts conduct that, while certainly troubling, does not amount to a violation of the First Amendment. There is nothing in the Complaint from which the Court could infer that Defendant Sanchez was substantially motivated to transfer Plaintiff by the fact that Plaintiff filed various grievances. In fact, there is nothing in the Complaint that indicates that Defendant Sanchez was aware of the grievances.[12] Instead, it appears on the face of the Complaint that Defendant Sanchez was motivated by a desire to prevent Plaintiff from receiving appropriate medical care.

Finally, Defendants argue that to the extent Plaintiff makes allegations concerning Defendant Stucker, Plaintiff's allegations are not sufficient to indicate that Defendant Stucker was substantially motivated to transfer Plaintiff as a response to Plaintiff's grievances. [#49 at 8-9] And the Court agrees that it appears from the face of the Complaint that if Defendant Stucker had an improper motive for signing off on Plaintiff's transfer, that improper motive was to deny Plaintiff medical care. As to Defendant Stucker, Plaintiff alleges that Defendant Stucker "strenuously objected" to Plaintiff being granted issuance of ortho-shoes. [#37 at 7] Plaintiff alleges that Defendant Stucker stated to various FCF personnel that, if it were up to Defendant Stucker, Plaintiff would get nothing "but a change of scenery." [*Id.*] As with the allegations made against Defendant Sanchez, the Court certainly finds this conduct troubling, but the conduct does

---

[12] Even construing the Complaint broadly, Plaintiff alleges only that Defendant Sanchez received "emails, letters, etc. . . . contending that the ortho-shoes were approved and should be issued." [#37 at 5] Nothing in this language suggests that Defendant Sanchez was made aware of the grievances filed by Plaintiff.

not appear to have any relation to Plaintiff's exercise of his First Amendment rights.[13] Rather, it appears that Defendant Stucker objected to Plaintiff receiving medical care, and thought that instead of receiving such medical care, Plaintiff should be transferred to another facility.

Accordingly, Plaintiff has failed to adequately allege that any Defendant was substantially motivated to transfer Plaintiff because Plaintiff filed grievances. The Court therefore GRANTS the Motion to the extent that it seeks dismissal of Claim Two.

**3. Qualified Immunity**

"Qualified immunity 'protects governmental officials from liability for civil damages insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."'" *Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Once qualified immunity has been raised, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, *and* (2) that the right was "clearly established" at the time of the challenged conduct.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). To be so "clearly established" as to fulfill the second prong, "a legal principle must have a sufficiently clear foundation in then-existing precedent" such that it is "settled law." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). The Tenth Circuit has stated that "[o]rdinarily this standard requires either that there is a Supreme Court or Tenth

[13] In fact, Plaintiff again fails to allege that Defendant Stucker had knowledge of the grievances. Though Plaintiff alleges that Defendant Stucker knew Plaintiff was granted issuance of the ortho-shoes [#37 at 7], this does not on its own imply that Defendant Stucker knew that relief was granted as a result of Plaintiff's grievances or even that Plaintiff had filed grievances.

Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'" *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)).

As Plaintiff has failed to state a plausible violation of a constitutional right as to Defendants Gabriel, Monday, and Stancil with respect to Claim One, or against any Defendant with respect to Claim Two, the Defendants are entitled to qualified immunity as to these Claims. On the other hand, Plaintiff has stated a plausible claim that Defendants Sanchez, Stucker, and Maul violated his constitutional rights with respect to Claim One. Thus, the Court must determine whether Plaintiff's rights were clearly established at the time of the challenged conduct.

The right underlying Plaintiff's conspiracy Claim is Plaintiff's Eighth Amendment constitutional right to adequate medical care. The United States Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quotation omitted); *see also Mata v. Saiz*, 427 F.3d 745, 749 (10th Cir. 2005) (finding "there is little doubt that deliberate indifference to an inmate's serious medical need is a clearly established constitutional right."). "Prison doctors and prison guards may thus be liable under § 1983 for 'indifference . . . manifested . . . in their response to the prisoner's needs or by . . . intentionally denying or delaying access to medical care.'" *Est. of Booker v. Gomez*, 745 F.3d 405, 429 (10th Cir. 2014) (quoting *Estelle*, 429 U.S. at 104-05).

Plaintiff alleges that Defendants Sanchez, Stucker, and Maul engaged in a conspiracy to intentionally deny access to medical care in the form of ortho-shoes. Plaintiff alleges that only days after Plaintiff was granted permission to utilize ortho-shoes, he was transferred facilities for the purpose of denying Plaintiff this necessary medical care. The Court finds that Plaintiff's right to medical care was clearly established at the time of the conduct pursuant to the cited Supreme Court and Tenth Circuit cases. *See also Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("The [Eighth] Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate . . . medical care."). While "an inadvertent failure to provide adequate medical care" does not rise to the level of a constitutional violation, *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Estelle*, 429 U.S. at 105-6), Plaintiff has plausibly alleged here that Defendants Sanchez, Stucker, and Maul purposely and intentionally denied Plaintiff medical care by transferring him to another facility days after his request for ortho-shoes was approved. Accordingly, Defendants are not entitled to qualified immunity at this stage of the proceedings. The Motion to Dismiss is thus DENIED with respect to Claim One to the extent that it is asserted against Defendants Sanchez, Stucker, and Maul.

### C. Intentional Infliction of Emotional Distress (Outrageous Conduct) Claim

Plaintiff alleges an IIED claim against Defendants Sanchez, Maul, Monday, Cullyford, White, Gabriel, and Dorcey.[14] [#37 at 7-10] Defendants argue that, with

---

[14] Notably, Plaintiff's Complaint states that Defendants Gabriel and Monday are being sued in their official capacities only. [#37 at 2-3] As previously described, Defendants have immunity from suits for damages in their official capacities. *See Mascheroni v. Bd. of Regents of Univ. of Cal.*, 28 F.3d 1554, 1559 (10th Cir. 1994) (explaining that neither

respect to this claim, they are entitled to immunity under the Colorado Governmental Immunity Act ("CGIA"). [#38 at 12-14]

"With limited exceptions, the [CGIA], Colo. Rev. Stat. § 24-10-101, *et seq.* bars claims against public entities and public employees that 'lie in tort or could lie in tort.'" *McKenzie v. City and Cnty. of Denver*, No. 21-cv-00833-PAB-STV, 2023 WL 5488465, at *6 (D. Colo. July 21, 2023) (citing Colo. Rev. Stat. §§ 24-10-106, -118), *report and recommendation adopted*, 2023 WL 5485625 (D. Colo. Aug. 24, 2023). "CGIA immunity impacts a court's subject matter jurisdiction." *Id.* at *7 (citing *Glasser v. King*, 721 F. App'x 766, 770 (10th Cir. 2018)). And "[b]ecause CGIA coverage implicates [the] [c]ourt's subject matter jurisdiction, plaintiffs bear the burden of establishing that a defendant's actions fall outside the protections of the CGIA." *Id.* at *8 (citing *Williams v. City of Arvada*, 21-cv-02236-NYW, 2022 WL 1102532, at *14 (D. Colo. Apr. 13, 2022); *L.J. v. Carricato*, 413 P.3d 1280, 1288 (Colo. App. 2018)).

---

pendent jurisdiction nor any other basis for federal jurisdiction, such as supplemental jurisdiction, overrides Eleventh Amendment immunity). Plaintiff's sought injunction cannot be construed as relief for Claim Three, as it has nothing to do with Plaintiff's emotional distress. Plaintiff explicitly seeks damages for this Claim [#37 at 11], which is not permissible with respect to official capacity Defendants under the Eleventh Amendment. Nevertheless, construing the Claim broadly, the Court assesses whether Plaintiff has adequately stated a claim against Defendants Gabriel and Monday in their individual capacities. In addition, Plaintiff states in his Response, for the first time, that this Claim is also being asserted against Defendant Stucker. [*See* #39 at ¶ 6] While Plaintiff does not state a Claim for IIED against Defendant Stucker for the reasons described herein, namely that Plaintiff does not allege he experienced severe emotional distress, the Court does not further address Defendant Stucker because the Complaint did not give Defendant Stucker fair notice that this Claim was being filed against him. [*See* #37 at 8]; *see also Robbins*, 519 F.3d at 1250 (a complaint must "provide each individual with fair notice as to the basis of the claims against him or her." (citation omitted)).

"The CGIA allows suit against public employees if their conduct is 'willful and wanton.'" *Id.* (citing C.R.S. § 24-10-118(1)). "Under Colorado law, conduct is not willful and wanton unless it is done in conscious or reckless disregard of the rights of others." *Id.* (citing *Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1994)). "A plaintiff must plead the 'specific factual basis' of an allegation that an employee's act or omission was willful and wanton in order to avoid dismissal for failure to state a claim." *Id.* (quoting *McDonald v. Wise*, 769 F.3d 1202, 1218 (10th Cir. 2014)).

IIED is a tort. *See, e.g.*, *Coomer v. Salem Media of Colo., Inc.*, 565 P.3d 1133, 1153-54 (Colo. App. 2025) (describing that IIED was defined in the Restatement (Second) of Torts and referring to IIED as an "intentional tort"); *Green v. Qwest Servs. Corp.*, 155 P.3d 383, 385 (Colo. App. 2006) ("The tort of outrageous conduct was designed to create liability for a very narrow type of conduct."). Thus, as set forth above, the CGIA bars Claim Three unless Plaintiff has alleged that Defendants' conduct was willful and wanton. The Court identifies the conduct Plaintiff alleges each Defendant engaged in one by one.

First, Plaintiff alleges that Defendant Gabriel signed off on his transfer to SCF. [#37 at 9] Plaintiff makes no other allegations regarding this Defendant. The claim against Defendant Gabriel is thus barred by the CGIA because there is nothing suggesting that Defendant Gabriel engaged in willful or wanton misconduct. Indeed, it is unclear whether Defendant Gabriel had any knowledge of the medical care Plaintiff was seeking. And "[d]ecisions about where a prisoner should be confined . . . [and] when he should be transferred . . . are commonplace judgments in the 'day-to-day management of prisons.'" *Franklin v. Dist. of Columbia*, 163 F.3d 625, 635 (D.D.C. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).

Next, Plaintiff alleges that Defendant White denied Plaintiff's requests for an MRI until December 2025. [#37 at 8] Nothing about this allegation suggests willful and wanton misconduct on the part of Defendant White. It is unclear whether there were any ramifications to the delay in receiving an MRI until December 2025, or whether Defendant White was conscious or reckless with respect to Plaintiff's medical treatment and ultimate transfer. Temporary denial of particular medical screening does not, in itself, plausibly indicate that a defendant consciously disregarded danger to a plaintiff, and thus this allegation does not rise to the level of wanton and willful misconduct. *See Martinez v. Est. of Bleck*, 379 P.3d 315, 323 (Colo. 2016) (describing that all definitions of willful and wanton conduct share the feature of referring to "a conscious disregard for the danger"). Thus, Defendant White is entitled to immunity under the CGIA.

Plaintiff also alleges that Defendant Cullyford denied approval of the shoes until Defendant Sanchez would authorize them, was directed by Defendant Sanchez to initiate Plaintiff's transfer to SCF, and denied Plaintiff's requests for an MRI until December 2025. [#37 at 5, 8] These allegations similarly fail to allege willful and wanton misconduct. As previously explained, a temporary denial of medical screening does not in itself indicate a conscious disregard of danger, especially where a plaintiff has failed to indicate any ramifications resulting from delay of the screening. Additionally, there is nothing in the Complaint suggesting that Defendant Cullyford was improperly motivated to transfer Plaintiff. *See also Leek*, 698 F. App'x at 926 ("[I]t is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation jurisprudence does not change this role." (quoting *Peterson*, 149 F.3d at 1144)). Defendant Cullyford was ordered to do so, and transfer of inmates is generally within the

everyday judgment of prison officials. Accordingly, Defendant Cullyford is immune from Claim Three under the CGIA.

Plaintiff next alleges that Defendant Dorcey signed off on Plaintiff's transfer. [#37 at 9] Defendant Dorcey also appears to have been involved in a hearing at which she denied Plaintiff and/or others access to ortho-shoes. [*Id.*] Again, this does not amount to an allegation of willful and wanton conduct and Plaintiff has pleaded no facts suggesting that Defendant Dorcey had an improper purpose in signing off on the transfer or denying access to ortho-shoes. While a prison administrator's discretion is not absolute, "the opinions of prison administrators carry great weight." *Mitchell v. Maryland*, 80 F.3d 1433, 1443 (10th Cir. 1996) (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)). As Plaintiff makes only conclusory allegations indicating that Defendant Dorcey acted out of an animus toward Plaintiff or others, the Court finds it proper to place great weight on Defendant Dorcey's discretionary authority to determine when to sign off on a transfer and what medical equipment should be supplied to inmates. As a result, willful and wanton misconduct has not been alleged, and Defendant Dorcey is therefore entitled to immunity under the CGIA.

Plaintiff's allegations against Defendant Monday are that she was involved in some respect in the approval process of the shoes, and that she was directed by Defendant Sanchez to initiate Plaintiff's transfer. [*Id.* at 5] These allegations similarly fail to suggest that Defendant Monday acted with a conscious disregard of danger to Plaintiff. Plaintiff does not allege any facts from which the Court could infer that Defendant Monday had any improper purpose in denying approval of the shoes or in initiating Plaintiff's transfer. Accordingly, Defendant Monday is entitled to immunity under the CGIA.

The conduct of Defendants Sanchez and Maul has already been extensively analyzed with respect to Claims One and Two. Ultimately, the Court finds that Plaintiff has not established that these Defendants consciously disregarded a danger to Plaintiff. *See Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1140 (D. Colo. 2001) (citing various definitions of willful and wanton misconduct, including "where [a] defendant pursues a highly hazardous course with the knowledge that tragic consequences are highly probable" and conduct that "the actor must have realized as dangerous, done heedlessly and recklessly, without regard to the consequences." (emphasis and quotations omitted)). Indeed, it is unclear what danger Plaintiff experienced when he was transferred. Plaintiff describes that SCF does not provide the "comfort" of ortho-shoes to inmates [#37 at 9], but it is not clear that Plaintiff was in any danger were he to not receive the shoes, let alone that Defendants Sanchez and Maul were consciously aware of such danger. Plaintiff additionally fails to allege in a non-conclusory fashion that Defendants were aware that he was in danger of experiencing severe emotional distress or that he actually experienced severe emotional distress.[15] Thus, while the Court again notes that the alleged conduct is concerning, it does not rise to the level of willful and wanton such that Defendants cannot be afforded immunity. Accordingly, Defendants Sanchez and Maul are entitled to immunity under the CGIA. For these reasons, the Court GRANTS the Motion with respect to Claim Three.

---

[15] The fact that Plaintiff fails to allege that he experienced severe emotional distress is also fatal to Claim Three with respect to all Defendants. To state a claim for IIED under Colorado law, an individual must plead: "(1) the defendant(s) engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress." *Archer v. Farmer Bros. Co.*, 70 P.3d 495, 499 (Colo. App. 2002).

## IV. CONCLUSION

For the foregoing reasons, the Motion [#38] is **GRANTED IN PART AND DENIED IN PART**. Claims Two and Three are **DISMISSED**. Claim One is **DISMISSED** to the extent that it is asserted against Defendants Monday, Gabriel, and Stancil. Claim One is also **DISMISSED** to the extent that it seeks damages from Defendants Sanchez, Maul, and Stucker in their official capacities. Claim One shall proceed against Defendants Sanchez, Maul, and Stucker in their individual capacities and against those Defendants in their official capacities for prospective injunctive relief.

DATED: November 23, 2026

BY THE COURT:

s/Scott T. Varholak
Chief United States Magistrate Judge